FILED

2007 FEB 28  P 3: 09

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

ADR

# 10
Fees Pd
SI

T-FILING

1   Kent A. Gardiner *(pro hac vice)*
    Kathryn D. Kirmayer *(pro hac vice)*
2   Jerome A. Murphy *(pro hac vice)*
    CROWELL & MORING LLP
3   1001 Pennsylvania Avenue, N.W.
    Washington, D.C. 20004
4   Telephone: 202-624-2500
    Facsimile: 202-628-5116
5   E-mail:   kgardiner@crowell.com
              kkirmayer@crowell.com
6             jmurphy@crowell.com

7   Daniel A. Sasse (CA Bar No. 236234)
    Christine E. Cwiertny (CA Bar No. 222098)
8   CROWELL & MORING LLP
    3 Park Plaza, 20th Floor
9   Irvine, California 92614
    Telephone: 949-263-8400
10  Facsimile: 949-263-8414
    E-mail:   dsasse@crowell.com
11            ccwiertny@crowell.com

12  Paul P. Eyre  *(pro hac vice)*
    Melissa Maxman *(pro hac vice)*
13  Tracy Cole *(pro hac vice)*
    BAKER & HOSTETLER LLP
14  666 Fifth Avenue
    New York, NY 10103
15  Telephone: 212-589-4210
    Facisimile: 212- 589-4201
16  E-mail:   peyre@bakerlaw.com
              mmaxman@bakerlaw.com
17            tcole@bakerlaw.com

18  Counsel for Plaintiff
    Edge Electornics, Inc.
19

C07 01207

RS

BY FAX

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

20              UNITED STATES DISTRICT COURT

21      NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

22  EDGE ELECTRONICS, INC.,
    a New York corporation,
23                                          Case No.

24              Plaintiff,                  **COMPLAINT FOR DAMAGES
                                            AND INJUNCTIVE RELIEF**

25      v.                                  (1)    **VIOLATION OF THE
                                                   SHERMAN ACT
26  HYNIX SEMICONDUCTOR, INC., a                   PURSUANT TO
    Korean corporation, HYNIX                      15 U.S.C. § 1**
27  SEMICONDUCTOR AMERICA, INC., a
    California corporation, MOSEL VITELIC
28  INC., a Taiwanese corporation, MOSEL
    VITELIC CORPORATION, a California

COMPLAINT OF EDGE ELECTRONICS, INC.

1   corporation, NANYA TECHNOLOGY
CORPORATION, a Taiwanese corporation,
2   NANYA TECHNOLOGY CORPORATION,
USA, a California corporation, WINBOND
3   ELECTRONICS CORPORATION, a
Taiwanese corporation, WINBOND
4   ELECTRONICS CORPORATION
AMERICA, a Delaware corporation, ELPIDA
5   MEMORY, INC., a Japanese corporation,
ELPIDA MEMORY (USA) INC., a
6   Delaware corporation, MITSUBISHI
ELECTRIC CORPORATION, a Japanese
7   corporation, MITSUBISHI ELECTRIC AND
ELECTRONICS USA, INC., a Delaware
8   corporation, INFINEON TECHNOLOGIES
AG, a German corporation, INFINEON
9   TECHNOLOGIES NORTH AMERICA
CORPORATION, a Delaware corporation,
10  SAMSUNG ELECTRONICS CO., LTD., a
Korean corporation, SAMSUNG
11  SEMICONDUCTOR, INC., a California
Corporation, and DOES 1 through 5,
12
        Defendants.
13

|   |   |
|---|---|
| **(2)** | **VIOLATION OF CALIFORNIA'S CARTWRIGHT ACT PURSUANT TO §§ 16700 ET SEQ. CAL. BUS. & PROF. CODE** |
| **(3)** | **VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION ACT PURSUANT TO §§ 17200 ET SEQ. OF CAL. BUS. & PROF. CODE** |

**DEMAND FOR JURY TRIAL**

14      Plaintiff Edge Electronics Inc., for its Complaint against defendants Hynix

15  Semiconductor, Inc.; Hynix Semiconductor America, Inc.; Mosel Vitelic Inc.; Mosel

16  Vitelic Corporation; Nanya Technology Corporation; Nanya Technology Corporation

17  (USA); Winbond Electronics Corporation; Winbond Electronics Corporation America;

18  Elpida Memory, Inc.; Elpida Memory (USA), Inc.; Mitsubishi Electric Corporation;

19  Mitsubishi Electric and Electronics USA, Inc.; Infineon Technologies AG; Infineon

20  Technologies North America Corporation; Samsung Electronics Co. Ltd; Samsung

21  Semiconductor, Inc.; and Doe defendants 1 through 5, alleges as follows:

22  **A.    Nature of Action**

23      1.      Plaintiff Edge Electronics Inc. ("Edge" or "Plaintiff") brings this action to

24  recover damages it has incurred as a result of long-standing collusion by suppliers of

25  dynamic random access memory ("DRAM") computer chips.  As described in more

26  detail below, in June 2002 the United States Department of Justice announced that it had

27  begun to investigate a conspiracy among the world's DRAM suppliers.  During the

28  conspiracy, DRAM suppliers conspired to control production capacity, raise prices or

*(left margin)* crowell [ moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

slow their decline, allocate customers, and otherwise unlawfully overcharge their DRAM

customers.  During that same period of time, Edge purchased several million dollars of

DRAM chips from the conspirators.

2.      As a result of the Department of Justice's investigation, five of the world's

largest suppliers of DRAM chips have now admitted their involvement in the conspiracy,

including Hynix Semiconductor, Inc., Infineon Technologies AG, Elpida Memory, Inc.,

and Samsung Electronics Co. Ltd.  Infineon Technologies AG, Hynix Semiconductor,

Inc., Samsung Semiconductor Co. Ltd. and Elpida Memory, Inc. have agreed to enter

guilty pleas and pay fines based on their involvement in the illegal activities.

Furthermore, senior officials of Hynix Semiconductor, Inc., Samsung Electronics Co.

Ltd., and Infineon Technologies AG have pleaded guilty to colluding with their

competitors to fix and raise DRAM prices.  The Department of Justice investigation is

continuing, and additional guilty pleas from other conspirators are expected.

3.      Plaintiff seeks treble damages and injunctive relief to remedy injuries it has

sustained as a result of the defendants' illegal activities.

**B.      Jurisdiction and Venue**

4.      Plaintiff brings this action pursuant to Sections 4, 12, and 16 of the Clayton

Act (15 U.S.C. § §  15, 22, and 26) (2000 suppl. 2) for treble damages and injunctive

relief, as well as reasonable attorneys' fees and costs, with respect to the injuries it has

sustained arising from violations by the defendants of Section 1 of the Sherman Act, 15

U.S.C. §  1 (2000 suppl. 2).

5.      Plaintiff also brings this action pursuant to Section 16750(a) of the

California Business and Professions Code, for injunctive relief and treble damages that

Plaintiff has sustained due to violations by the defendants and their co-conspirators of

Section 16700 *et seq.* of the California Business and Professions Code (the "Cartwright

Act").  Plaintiffs' claims are also brought pursuant to Sections 17203 and 17204 of the

California Business and Professions Code, to obtain restitution from and an injunction

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1   against the defendants due to their violations of Section 17200 *et seq.* of the California

2   Business and Professions Code (the "Unfair Competition Act").

3       6.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331

4   and 1337(a). This Court has supplemental jurisdiction over Plaintiff's state law claims

5   pursuant to 28 U.S.C. § 1367 because those claims are related to the federal claims such

6   that they form part of the same case or controversy.

7       7.    This Court has jurisdiction over this action pursuant to the Foreign Trade

8   Antitrust Improvements Act, 15 U.S.C. § 6a (2000 suppl. 2), in that Plaintiff's injuries

9   were proximately caused by increased prices for DRAM in the United States.

10       8.    Venue is proper in this judicial district pursuant to 15 U.S.C. §§ 15 and 22,

11   and 28 U.S.C. § 1391(b), (c), and (d), in that at least one of the defendants resides in this

12   judicial district or is licensed to do business or is doing business in this judicial district.

13   Venue as to each defendant also is proper in this judicial district pursuant to the

14   provisions of Sections 16750(a) and 17203 of the California Business and Professions

15   Code. The unlawful conduct undertaken pursuant to the combination and conspiracy

16   alleged herein had and has a direct effect on business within the State of California, and

17   the trade and commerce described below is carried on to a significant degree within the

18   State of California.

19       9.    This Court has in personam jurisdiction over each of the defendants

20   because, inter alia, each defendant (a) transacted business throughout the United States,

21   including this district; (b) manufactured, sold, shipped, and delivered substantial

22   quantities of DRAM throughout the United States, including this district; (c) had

23   substantial contacts with the United States; and (d) was engaged in an illegal scheme and

24   price-fixing conspiracy that was directed at and had the intended effect of causing injury

25   to persons and entities residing in, located in, or doing business throughout the United

26   States.

27

28

*crowell & moring*
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

**C.     Intradistrict Assignment**

10.     Because a large number of the defendants maintain their principal places of business within Santa Clara County, this action arises in Santa Clara County for the purposes of Civil L.R. 3-2(c), and should be assigned to the San Jose Division. Concurrent with or shortly after the filing of its Complaint, however, Edge will file an Administrative Motion to Consider Whether Cases Should Be Related in the *In re DRAM Antitrust Litigation*, MDL 02-1486 PJH in the United States District Court for the Northern District of California, San Francisco Division.

**D.     Parties**

11.     Edge is a New York corporation with its principal place of business in Bohemia, New York. Edge is a franchised distributor of both commercial and military electronic components serving a worldwide base of OEM customers, with sales in 2006 of $26.5 million. During the relevant timeframe, Edge was a direct purchaser of DRAM from one or more of the defendants and/or their co-conspirators. As a direct purchaser, Edge frequently negotiated with one or more of the defendants and/or their co-conspirators the price of DRAM and memory modules primarily comprised of DRAM. Edge issued all DRAM purchase orders out of and received all shipments and deliveries of DRAM at its New York offices. Furthermore, Edge made all purchasing and pricing decisions for DRAM out of its New York offices. Defendants' and their co-conspirators' price-fixing was the proximate cause of artificially-elevated prices actually paid by Edge for DRAM delivered both throughout the United States and the world. During the relevant timeframe, Edge also negotiated DRAM prices with one or more of the defendants and/or their co-conspirators on behalf of Edge's customers. To the extent Edge was an indirect purchaser of DRAM, the price of that DRAM was artificially inflated, causing Edge to pay a higher price.

12.     Defendant Hynix Semiconductor, Inc., a Korean corporation, maintains its head offices at San 136-1, Ami-Ri, Bubal-eub, Ichon-si, Kyoungki-do, Korea, 467-701. During the time covered in this complaint, Hynix Semiconductor, Inc., a manufacturer of

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

5

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92514-8505
949 263-8400

1   DRAM, sold and distributed DRAM throughout the world, including the United States.

2   On information and belief, as a Korea-based manufacturer of DRAM with facilities

3   throughout the world, Hynix Semiconductor, Inc. manipulated the price of DRAM

4   charged around the globe, including in the United States, by intentionally restricting the

5   production capacity of its manufacturing plants located in Asia and directing its

6   international affiliates, including those located in the United States, to charge collusively-

7   established prices for DRAM.  As a result of Hynix Semiconductor, Inc.'s illegal

8   activities directed at the United States and elsewhere, Edge paid artificially-inflated

9   prices for DRAM.

10          13.     Defendant Hynix Semiconductor America, Inc. is a California corporation

11   located at 3101 North First Street, San Jose, California 95134.  Hynix Semiconductor

12   America, Inc., on information and belief, is a wholly-owned and controlled subsidiary of

13   defendant Hynix Semiconductor, Inc. (collectively referred to as "Hynix").  During the

14   time period covered in this complaint, Hynix Semiconductor America, Inc. sold and

15   distributed DRAM throughout the United States.

16          14.     Defendant Mosel Vitelic Inc. is a Taiwanese corporation which maintains

17   its headquarters at No. 1 Creation Road 1, Hsinchu Science Park, Hsinchu, Taiwan,

18   30077, R.O.C.  During the time period covered in this complaint, Mosel Vitelic Inc., a

19   manufacturer of DRAM, sold and distributed DRAM throughout the world, including the

20   United States.  On information and belief, as a Taiwan-based manufacturer of DRAM

21   with facilities throughout the world, Mosel Vitelic Inc. manipulated the price of DRAM

22   charged around the globe, including in the United States, by intentionally restricting the

23   production capacity of its manufacturing plants located in Asia and directing its

24   international affiliates, including those located in the United States, to charge collusively-

25   established prices for DRAM.  As a result of Mosel Vitelic Inc.'s illegal activities

26   directed at the United States and elsewhere, Edge paid artificially-inflated prices for

27   DRAM.

28

6

15.    Defendant Mosel Vitelic Corporation is a California corporation located at 3910 North First Street, San Jose, California 95314. Mosel Vitelic Corporation, on information and belief, is a wholly-owned and controlled subsidiary of defendant Mosel Vitelic Inc. (collectively referred to as "Mosel Vitelic"). During the time period covered in this complaint, Mosel Vitelic Corporation sold and distributed DRAM throughout the United States.

16.    Defendant Nanya Technology Corporation is a Taiwanese corporation which maintains its headquarters at Hwa Ya Technology Park, 669, Fu Hsing 3rd Rd., Keuishan, Taoyuan, Taiwan, 333. During the time period covered in this complaint, Nanya Technology Corporation, a manufacturer of DRAM, sold and distributed DRAM throughout the world, including the United States. On information and belief, as a Taiwan-based manufacturer of DRAM with facilities throughout the world, Nanya Technology Corporation manipulated the price of DRAM charged around the globe, including in the United States, by intentionally restricting the production capacity of its manufacturing plants located in Asia and directing its international affiliates, including those located in the United States, to charge collusively-established prices for DRAM. As a result of Nanya Technology Corporation's illegal activities directed at the United States and elsewhere, Edge paid artificially-inflated prices for DRAM.

17.    Defendant Nanya Technology Corporation, USA, a California corporation, is located at 675 E. Brokaw Road, San Jose, California 95112. On information and belief, Nanya Technology Corporation USA is a wholly-owned and controlled subsidiary of defendant Nanya Technology Corporation (collectively referred to as "Nanya"). In addition to its main U.S. office in San Jose, Nanya Technology Corporation operates sales and technical support offices in San Jose, California, Raleigh, North Carolina, and Austin, Texas and operates a memory design center in Houston, Texas. During the time period covered in this complaint, Nanya Technology Corporation USA sold and distributed DRAM throughout the United States.

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1     18.    Defendant Winbond Electronics Corporation is headquartered at No. 4,

2  Creation Road 3 and No. 9, Li-Shin Road, Science-Based Industrial Park, Hsinchu,

3  Taiwan, 300, R.O.C.  During the time period covered in this complaint, Winbond

4  Electronics Corporation, a manufacturer of DRAM, sold and distributed DRAM

5  throughout the world, including the United States.  On information and belief, as a

6  Taiwan-based manufacturer of DRAM with facilities throughout the world, Winbond

7  Electronics Corporation manipulated the price of DRAM charged around the globe,

8  including in the United States, by intentionally restricting the production capacity of its

9  manufacturing plants located in Asia and directing its international affiliates, including

10  those located in the United States, to charge collusively-established prices for DRAM.

11  As a result of Winbond Electronics Corporation's illegal activities directed at the United

12  States and elsewhere, Edge paid artificially-inflated prices for DRAM.

13     19.    Defendant Winbond Electronics Corporation America, a Delaware

14  corporation, is located at 2727 North First Street, San Jose, California 95134 and is a

15  wholly-owned subsidiary of Winbond Electronics Corporation (collectively referred to as

16  "Winbond").  During the time period covered in this complaint, Winbond Electronics

17  Corporation America sold and distributed DRAM throughout the United States.

18     20.    Defendant Elpida Memory, Inc., a Japanese corporation, maintains its

19  executive offices at Sumitomo Seimei Yaesu Building, 3F, 2-1 Yaesu 2-chome, Chuo-ku,

20  Tokyo, 104-0028, Japan.  During the time period covered in this complaint, Elpida

21  Memory, Inc., a manufacturer of DRAM, sold and distributed DRAM throughout the

22  world, including the United States.  On information and belief, as a Japan-based

23  manufacturer of DRAM with facilities throughout the world, Elpida Memory, Inc.

24  manipulated the price of DRAM charged around the globe, including in the United

25  States, by intentionally restricting the production capacity of its manufacturing plants

26  located in Asia and directing its international affiliates, including those located in the

27  United States, to charge collusively-established prices for DRAM.  As a result of Elpida

28

1 Memory, Inc.'s illegal activities directed at the United States and elsewhere, Edge paid

2 artificially-inflated prices for DRAM.

3       21.    Defendant Elpida Memory (USA) Inc., a Delaware corporation, is located

4 at 2001 Walsh Ave, Santa Clara, California, 95050 and is a wholly-owned subsidiary of

5 Elpida Memory, Inc. (collectively referred to as "Elpida"). During the time period

6 covered in this complaint, Elpida Memory (USA) Inc. sold and distributed DRAM

7 throughout the United States.

8       22.    Defendant Mitsubishi Electric Corporation, a Japanese corporation, is

9 headquartered at Tokyo Building, 2-7-3, Marunouchi, Chiyoda-ku, Tokyo 100-8310,

10 Japan. During the time period covered in this complaint, Mitsubishi Electric

11 Corporation, a manufacturer of DRAM, sold and distributed DRAM throughout the

12 world, including the United States. On information and belief, as a Japan-based

13 manufacturer of DRAM with facilities throughout the world, Mitsubishi Electric

14 Corporation manipulated the price of DRAM charged around the globe, including in the

15 United States, by intentionally restricting the production capacity of its manufacturing

16 plants located in Asia and directing its international affiliates, including those located in

17 the United States, to charge collusively-established prices for DRAM. As a result of

18 Mitsubishi Electric Corporation's illegal activities directed at the United States and

19 elsewhere, Edge paid artificially-inflated prices for DRAM.

20       23.    Defendant Mitsubishi Electric and Electronics USA, Inc., a Delaware

21 corporation, is headquartered at 5665 Plaza Drive, Cypress, CA 90630-0003 and is a

22 wholly-owned subsidiary of Mitsubishi Electric Corporation. During the time period

23 covered in this complaint, Mitsubishi Electric and Electronics USA, Inc. sold and

24 distributed DRAM throughout the United States.

25       24.    Defendant Infineon Technologies AG, a German corporation, has its

26 principal place of business at Am Campeon 1-12, Munich, 85579, Germany. During the

27 time period covered in this complaint, Infineon Technologies AG, a manufacturer of

28 DRAM, sold and distributed DRAM throughout the world, including the United States.

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

9

1  On information and belief, as a Germany-based manufacturer of DRAM with facilities

2  throughout the world, Infineon Technologies AG manipulated the price of DRAM

3  charged around the globe, including in the United States, by intentionally restricting the

4  production capacity of its manufacturing plants located throughout the world and

5  directing its international affiliates, including those located in the United States, to charge

6  collusively-established prices for DRAM. As a result of Infineon Technology AG's

7  illegal activities directed at the United States and elsewhere, Edge paid artificially-

8  inflated prices for DRAM.

9      25.    Defendant Infineon Technologies North America Corporation, a Delaware

10  corporation and a wholly-owned subsidiary of Infineon Technologies AG (collectively,

11  "Infineon"), has its principal place of business at 640 N. McCarthy Blvd., Milipitas,

12  California 95035. During the time period covered in this complaint, Infineon

13  Technologies North America Corporation sold and distributed DRAM throughout the

14  United States. Recently, Infineon spun-off its DRAM business, which is now operating

15  as Qimonda, a wholly-owned subsidiary of Infineon Technologies AG.

16      26.    Defendant Samsung Electronics Co., Ltd., a Korean corporation, has its

17  principal place of business at 750 2-ga Taepyong-ro, Chung-gu, Seoul, 100-742, Korea.

18  During the time period covered in this complaint, Samsung Electronics Co., Ltd., a

19  manufacturer of DRAM, sold and distributed DRAM throughout the world, including the

20  United States. On information and belief, as a Korea-based manufacturer of DRAM with

21  facilities throughout the world, Samsung Electronics Co., Ltd. manipulated the price of

22  DRAM charged around the globe, including in the United States, by intentionally

23  restricting the production capacity of its manufacturing plants located in Asia and

24  directing its international affiliates, including those located in the United States, to charge

25  collusively-established prices for DRAM. As a result of Samsung Electronics Co., Ltd.'s

26  illegal activities directed at the United States and elsewhere, Edge paid artificially-

27  inflated prices for DRAM.

28

COMPLAINT OF EDGE ELECTRONICS, INC.

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1    27.    Defendant Samsung Semiconductor, Inc., a California corporation and a

2    wholly-owned subsidiary of Samsung Electronics Co., Ltd. (collectively, "Samsung"),

3    has its principal place of business at 3655 North First Street, San Jose, California, 95134.

4    During the time period covered in this complaint, Samsung Semiconductor, Inc. sold and

5    distributed DRAM throughout the United States.

6    28.    Doe defendants 1 through 5 are persons whose identities are as yet

7    unknown to Plaintiff and who have participated in the violations of the federal and state

8    antitrust laws for which Plaintiff seeks relief, and have performed acts and made

9    statements in furtherance thereof.

10    29.    Various individuals, partnerships, corporations, and associations other than

11    the defendants named in this complaint (the "Co-conspirators" and jointly with the named

12    defendants, "Defendants") have participated in the violations of the federal and state

13    antitrust laws for which Plaintiff seeks relief, and have performed acts and made

14    statements in furtherance thereof.

15    30.    Whenever in this complaint reference is made to any act, deed, or

16    transaction of any corporation, the allegation means that the corporation engaged in the

17    act, deed, or transaction by or through its officers, directors, agents, employees, or

18    representatives while they were actively engaged in the management, direction, control,

19    or transaction of the corporation's business or affairs.

20    E.    **Trade and Commerce**

21    31.    During the relevant period, Defendants sold and shipped substantial

22    quantities of DRAM in a continuous and uninterrupted flow of interstate and international

23    commerce to customers located in countries and states other than the countries and states

24    in which Defendants manufacture DRAM.

25    32.    The business activities of Defendants that are the subject of this Complaint

26    were within the flow of, and substantially affected, interstate and international trade and

27    commerce. The global conspiracy, in which the Defendants participated, had a direct,

28    substantial, and reasonably foreseeable effect on United States commerce.

11

COMPLAINT OF EDGE ELECTRONICS, INC.

crowell moring

3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

33.   During the relevant period, Defendants made most of the DRAM sales in the global market.

**F.   Statement of Facts**

34.   Defendants manufacture, sell, and distribute memory chips throughout the world. Memory chips store data in a wide variety of computing and electronic devices. Memory chips are used in the manufacture of, and are critical to the functioning of, such devices as personal computers, workstations, servers, printers, fax machines, digital cameras and video recorders, video game equipment, personal digital assistants, and cellular and wireless telephones.

35.   DRAM is the dominant, most common form of memory chip. "Random Access Memory" means that the data, stored in the form of 0s and 1s, can be accessed directly from any part of the memory, rather than having to proceed sequentially from some starting place. DRAM is called "dynamic" because it must have its storage cells refreshed or given a new electronic charge every few milliseconds.

36.   A DRAM chip is a large-scale integrated circuit with simple structures, and is fairly easy to manufacture. Accordingly, DRAM is a commodity, with each of Defendants' products being freely interchangeable with the products of another company.

37.   DRAM is sold in individual chips, or in modules with several chips attached to each module.

38.   DRAM sales exceed $20 billion a year. The world's top four makers of DRAM, all of whom are Defendants herein, control roughly 70% of the market; the top six manufacturers control 96% of the market.

39.   The DRAM industry enjoyed an extended period of prosperity in the mid-1990s as the PC computer industry boomed. During this time DRAM manufacturers could not meet the demand for their products. Revenues from DRAM sales nearly tripled between 1993 and 1995. DRAM manufacturers responded by building substantial new chip-making capacity. Factories for the manufacture of DRAM chips are referred to as fabrication plants, or "fabs."

12

40.    In 1996, this new capacity, coupled with demand decline, led to pressure on Defendants to cut their prices.  Defendants responded by illegally conspiring to limit capacity and artificially fix and raise prices.

41.    Specifically, in December 1996, DRAM manufacturers attended a SyncLink Consortium.  SyncLink was a DRAM industry organization whose members consisted of DRAM suppliers.  During this December 1996 meeting, DRAM suppliers resolved to establish unified strategies to address market concerns.  Although the organization initially appears to have been created to address technology concerns, the industry reorganized the consortium in January 1999, causing the new president of the organization to acknowledge publicly that the focus of the group would be to "co-ordinate instead of develop new technology."

42.    Executives from DRAM suppliers met again in Japan in January 1997.  During this meeting the participants agreed that they would need to continue communicating with each other.  The participants also agreed to use an e-mail distribution software program then known as a reflector e-mail, which permitted industry executives to exchange information via e-mail quickly and confidentially.

43.    Shortly after this meeting, in February 1997, DRAM suppliers curtailed production at their DRAM manufacturing facilities as part of a collusive effort to maintain and raise prices.

44.    This coordinated drop in production had an immediate, but temporary, effect on prices, which rose during the second quarter of 1997.  Prices then began to fall again in the second half of 1997.

45.    As DRAM prices continued to fall into early 1998, DRAM manufacturers held at least two meetings to discuss the problem in April and June.  The second meeting, held on June 25, was called an "Executive Summit" and was attended by industry executives.  One of the topics at the Summit was how to "Manage Price Competition, Profitability."  Upon information and belief, during these meetings, and in communications before and after these meetings, Defendants discussed supply and

13

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1    pricing issues, and agreed that they would limit their capacity to artificially decrease the

2    supply of, and increase, maintain, or control the price of, DRAM chips.

3        46.    Between June and September of 1998 every major DRAM manufacturer

4    announced that it was curtailing or shutting down DRAM production facilities because of

5    a lack of demand for the product.  Hynix's corporate predecessor, Hyundai,[1] and

6    Samsung each shut down their facilities for approximately one to two weeks in the

7    summer of 1998.  Other suppliers communicated their intentions to slash production.

8        47.    This coordinated withdrawal of production capacity had an immediate

9    effect on prices, which began to rise in June 1998, and increased steadily throughout the

10   rest of the year.

11       48.    In August 1998, an email circulated among DRAM suppliers, which

12   warned that during the ramp-up in production of a new DRAM standard being

13   implemented by Rambus, DRAM vendors "will need a constant flow of information to

14   help make wise decisions and to walk the fine line between a pleasant shortage and a

15   disastrous over-supply."  A Hyundai executive noted that a shortage would please

16   DRAM manufacturers because "prices go up."

17       49.    A former employee of Samsung, Devin Cole, has admitted that before he

18   left Samsung in July 1998, he spoke with competitors regarding price issues.  Cole

19   informed federal authorities that these conversations led to agreements on a "range pact"

20   that included "the ranges of prices, where each competitor felt that others would price in

21   the range, and whether each competitor would move prices 'a little' or 'a lot'."  Upon

22   information and belief, this evidence is corroborated by Cole's own notes and other

23   documents.

24       50.    DRAM prices continued to climb steadily in 1999.  During this time,

25   Defendants continued their illegal communications with each other about prices, market

26

27   [1]   The Hyundai Group's semiconductor subsidiary was named Hyundai Electronics.
        In March 2001 Hyundai renamed this subsidiary Hynix Semiconductor.  In August
28      2001 Hyundai spun off the company.

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1  share, and supply.  In July 1999, a Hyundai executive sent an e-mail to Farhad Tabrizi,

2  the vice president of marketing for Hyundai and head of the DRAM industry group

3  SLDRAM Inc. (the successor organization to SyncLink).  The e-mail states that "[w]ith

4  Samsung building significant amounts of product, we need to work with them to limit the

5  supply in the market, otherwise we both will be competing for market share which will

6  result in an oversupply.  We have to meet with Samsung and discuss our and their

7  production plan, TAM analysis and targeted market share."  In response, another

8  Hyundai employee stated that he had "a connection" at Samsung and offered to set up a

9  meeting.

10       51.    A short time later, Hyundai and Samsung both began raising prices at an

11  accelerated rate.  Indeed, in September 1999, industry sources noted that South Korea's

12  DRAM suppliers – Samsung and Hyundai – were raising prices in one-to-two week

13  intervals.

14       52.    Despite their unlawful and secret cooperation to reduce DRAM production

15  and increase price, Defendants publicly misrepresented that DRAM prices escalated due

16  to increased demand resulting from strong sales of low-priced PCs incorporating large

17  quantities of DRAM.  In a September 13, 1999, Electronic News article, Avo Kanadjian,

18  vice president of marketing for Samsung said:  "Because we see the value PC and free

19  PCs entering the market at extraordinary numbers, DRAM oversupply has silently gone

20  into a shortage."  Chee-Wai Ho, director of product marketing for memory products at

21  Infineon Technologies AG, agreed.

22       53.    Because of Defendants' collusive activities, DRAM prices remained

23  artificially inflated from the middle of 1998 through the fall of 2000.

24       54.    In August 2000 prices began to drop once again.  By mid-2001, every

25  major DRAM manufacturer was reporting losses.  Their stock prices fell.  Once again the

26  Defendants responded by conspiring with each other to control production and raise

27  prices.  Their collusive activities included, but were not limited to, the following:

28

15

COMPLAINT OF EDGE ELECTRONICS, INC.

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1    • In July 2001, Hynix Semiconductor, Inc. announced plans to cut production
2      to boost prices. A spokeswoman for Hynix stated: "We understand other
3      companies are also considering cuts."
4    • In August 2001, an executive of Mosel-Vitelic admitted that Taiwan
5      DRAM manufacturers had discussed curtailing production in an effort to
6      raise prices.
7    • Also in August, Thomas Chang at Mosel Vitelic acknowledged talking to
8      other Taiwan DRAM manufacturers about reducing supply. "Our
9      preliminary agreement is to trim some production starting September."
10   • In November, a manager at a Co-conspirator acknowledged efforts of
11     defendant Infineon and Samsung to raise prices of DRAM, and stated that
12     the Co-conspirator intended to raise prices for all of its OEM customers:
13     "The consensus from all suppliers is that if [the Co-conpsirator] makes the
14     move, all of them will do the same and make it stick."
15   • A manager at a Co-conspirator also confirmed that the Co-conspirator
16     spoke with competitors about pricing. This manager pleaded guilty in
17     January 2004 to federal charges of obstruction of justice, for altering and
18     withholding documents responsive to a grand jury subpoena issued to the
19     Co-conspirator. At his sentencing hearing, the manager acknowledged that
20     these documents consisted of notes that he took during weekly conference
21     calls with other regional sales managers of the Co-Conspirator, who like
22     this manager were responsible for customers. During these calls the
23     managers would discuss price recommendations for customers and the
24     prices at which competitors would sell their products to these customers.
25     This manager's notes reflected this pricing information and identified
26     communications between the Co-conspirator and its competitors about sales
27     and pricing.
28

16

COMPLAINT OF EDGE ELECTRONICS, INC.

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

55.     These collusive activities perpetrated by Defendants worked: by the end of 2001, the 128 MB DRAM price had increased by 95% over the November 6, 2001, spot price.

56.     Nevertheless, Defendants again publicly, and falsely, attributed the increase in DRAM price to legitimate market forces.  In a December 4, 2001, interview published on Simmtester.com, the chief executive officer of a Co-conspirator, was asked why prices had recently increased sharply and suddenly.  He answered: "I have no idea.  There clearly was a belated increase in demand as the seasonal rebound we had expected two-and-a-half months earlier finally kicked in.  And, clearly the Japanese are cutting back their DRAM production.  Even Hynix, which is so unpredictable, cut some production by temporarily closing its Eugene, Ore., fab.  When it was running at 40K wafer capacity a month, that fab alone probably had about 2.5% of the world's DRAM production."

57.     DRAM price increases, as well as Defendants' conspiracy, continued into 2002.  From November 2001 to April 2002, DRAM prices tripled.  And in May 2002, Thomas Chang of Mosel Vitelic stated: "We're trying to encourage a price of US $3.  That's the consensus . . . You don't need to have a meeting.  You just need to have a phone call.  Everybody knows each other.  We just said 'try not to sell below US $3.'"  On the other hand, in a press release issued on April 15, 2002, Hynix represented that its increased revenues resulted from increased demand in the DRAM market.

G.      **The Department of Justice Investigation**

58.     On or about September 4, 2004, Infineon Technologies AG entered into a plea agreement with the government, pursuant to which it agreed to plead guilty to conspiring to fix prices in the DRAM market between July 1999 and June 2002.

59.     On April 21, 2005, the Department of Justice announced that it had entered into a plea agreement with Hynix Semiconductor, Inc. pursuant to which Hynix agreed to plead guilty to conspiring to fix prices in the DRAM market between April 1999 and June 2002.

17

1    60.    On or about October 13, 2005, the Department of Justice announced that it

2  had entered into a plea agreement with Samsung pursuant to which Samsung agreed to

3  plead guilty to conspiring to fix prices in the DRAM market between April 1999 and

4  June 2002.

5    61.    Three months later, on January 30, 2006, the Department of Justice

6  announced that it had entered into a plea agreement with Elpida Memory, Inc. pursuant to

7  which Elpida agreed to plead guilty to conspiring to fix prices in the DRAM market

8  between April 1999 and June 2002.

9  **H.    Violations Alleged**

10             **FIRST CAUSE OF ACTION**

11        **(Violation of Sherman Act Against All Defendants)**

12    62.    Plaintiff incorporates by reference, as if fully set forth, the allegations of

13  paragraphs 1 through 61 of this Complaint.

14    63.    Beginning in or about January 1997, the exact date being unknown to

15  Plaintiff, and continuing thereafter at least through 2002 (the Cartel Period), Defendants,

16  by and through their officers, directors, employees, agents, or other representatives,

17  entered in a continuing contract, combination or conspiracy to unreasonably restrain trade

18  and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (2000

19  suppl. 2).

20    64.    Defendants, by their unlawful conspiracy, artificially raised, inflated, and

21  maintained the market price of DRAM as herein alleged.

22    65.    The contract, combination, or conspiracy consisted of a continuing

23  agreement, understanding, and concert of action among Defendants, the substantial terms

24  of which were to fix, raise, maintain, and stabilize the prices of, and/or allocate the

25  market for, DRAM they sold throughout the world, including the United States.

26    66.    Upon information and belief, for the purposes of formulating and

27  effectuating their contract, combination, or conspiracy, Defendants did those things they

28  contracted, combined or conspired to do, including:

crowell moring

3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

a.      participating in meetings and conversations to discuss the prices of and/or allocate the global market for DRAM;

b.      agreeing to manipulate capacity, production, and prices so as to boost sagging DRAM prices in a manner that deprived direct purchasers of free and open competition;

c.      issuing price announcements and price quotations in accordance with the agreements reached; and

d.      selling DRAM to customers throughout the world, including the United States, at artificially inflated and non-competitive prices.

67.     The above combination and conspiracy has had the following effects, among others:

a.      price competition in the sale of DRAM by Defendants has been restrained, suppressed, and eliminated throughout the world, including the United States;

b.      prices for DRAM sold by Defendants have been raised, fixed, maintained, and stabilized at artificially high and noncompetitive levels throughout the world, including the United States; and

c.      purchasers of DRAM from Defendants have been deprived of the benefit of free and open competition in the purchase of DRAM.

68.     As a direct and proximate result of the unlawful conduct of Defendants in furtherance of their continuing contract, combination, and/or conspiracy, Plaintiff has been injured in its business and property in that it has paid more for DRAM than it otherwise would have paid in the absence of the Defendants' unlawful price fixing.

## SECOND CAUSE OF ACTION

### (Violation of California's Cartwright Act Under § § 16700 Et Seq.

### Of The California Business & Professions Code Against All Defendants)

69.     Plaintiff incorporates by reference, as if fully set forth, paragraphs 1 through 68 of this Complaint.

COMPLAINT OF EDGE ELECTRONICS, INC.

70.    Beginning in or about January 1997, the exact date being unknown to Plaintiff, and continuing thereafter at least through 2002, Defendants by and through their officers, directors, employees, agents, or other representatives violated Section 16700 *et seq.* of the California Business and Professions Code ("Section 16700" or "Cartwright Act") by entering into and engaging in a continuing unlawful trust in restraint of trade and commerce, as described above.  During this period, Defendants, and each of them, have effected this unlawful trust, and violated Section 16700, by combining, conspiring, and/or agreeing to fix, raise, stabilize, and maintain the prices of, and/or allocate the market for, DRAM at supra-competitive levels.  Section 16720 of the Cartwright Act expressly forbids the creation of such unlawful trusts.

71.    The purpose of Defendants' unlawful combination, conspiracy, and/or agreement was to create artificially higher DRAM prices in the marketplace thereby providing Defendants, and each of them, with substantially higher revenues and profits than would otherwise have been the case in a truly competitive market.

72.    In forming, and in furtherance of, this unlawful combination, conspiracy, and/or agreement, Defendants engaged in acts, practices, and courses of conduct, which included, but are not limited to, the following:

   a.    participating in meetings and/or discussions amongst themselves, as discussed more fully above, for the purpose of coordinating DRAM production reductions to limit supply and fix, raise, stabilize, and maintain the prices of, and/or allocate the market for, DRAM;

   b.    participating in meetings, discussions, and/or communications amongst themselves, as discussed more fully above, for the purpose of exchanging information about DRAM prices and setting price ranges for DRAM to fix, raise, stabilize, and maintain the prices of, and/or allocate the market for, DRAM;

   c.    participating in meetings, discussions, and/or communications amongst themselves, as discussed more fully above, for the purpose

20

COMPLAINT OF EDGE ELECTRONICS, INC.

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1  of setting DRAM contract prices for OEM customers to fix, raise,

2  stabilize, and maintain the prices of, and/or allocate the market for,

3  DRAM; and

4      d.    using their best efforts to ensure that the prices each charged its

5  customers for DRAM were within the price range, or at the same

6  price, agreed to during the meetings, discussions, and/or

7  communications held amongst themselves.

8      73.    As a direct consequence of the Defendants' acts, practices, and course of

9  conduct in implementing the unlawful trust, the following have occurred:

10      a.    DRAM price competition has been restrained, suppressed, and/or

11  eliminated, including, but not limited to, within and throughout the

12  State of California;

13      b.    DRAM price has been fixed, raised, maintained, and stabilized at a

14  high and artificial level, including, but not limited to, within and

15  throughout the State of California;

16      c.    Plaintiff has been deprived of the benefit of free and openly

17  competitive negotiations for DRAM in the marketplace; and

18      d.    Plaintiff has been forced to pay artificially high prices for DRAM for

19  use in its computer systems and network products.

20      74.    As a direct and proximate result of Defendants' unlawful combination,

21  conspiracy and/or agreement, Plaintiff has been injured in its business and property in

22  that it had to pay more for DRAM than it would have paid in an otherwise free and open

23  marketplace.  Plaintiff is unable to state its damages with precision at this time, because

24  that determination will require discovery and accounting analysis of Defendants' books

25  and records.  Nevertheless, under Section 16750(a) of the Business and Professions Code,

26  Plaintiff is entitled to interest on the aforementioned sum from the dates of service of this

27  Complaint until entry of judgment thereon, to its costs of suit, including reasonable

28  attorneys' fees and treble damages.

21

COMPLAINT OF EDGE ELECTRONICS, INC.

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

## THIRD CAUSE OF ACTION

### (Unfair Competition Under § § 17200 Et Seq. Of

### The California Business & Professions Code Against All Defendants)

75.     Plaintiff incorporates by reference, as if fully set forth, paragraphs 1 through 74 of this Complaint.

76.     Plaintiff brings this action pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from Defendants for acts, as alleged herein, that violate Section 17200 et seq. of the California Business and Professions Code, commonly known as the Unfair Competition Act.

77.     Beginning in or about January 1997, the exact date being unknown to Plaintiff, and continuing thereafter at least through 2002, Defendants by and through their officers, directors, employees, agents, or other representatives committed, and continue to commit, acts of unfair competition, as defined by Sections 17200 et seq. of the California Business and Professions Code.  Defendants' acts of unfair competition, more fully alleged in paragraphs 1 through 74 above, included participating in an unlawful combination, conspiracy, and/or agreement to fix, raise, stabilize, and maintain the prices of, and/or allocate the market for, DRAM prices and making misrepresentations, or fraudulently concealing relevant information, concerning the reason for increased DRAM prices.

78.     Plaintiff has standing to bring this action, because it purchased DRAM from Defendants during the period January 1997 to the present.  In doing so, Plaintiff was injured by Defendants' unlawful actions, because it paid more for DRAM than it otherwise would have, as described more fully above.  These higher prices caused Plaintiff to lose money and customers, who could not afford to purchase Plaintiff's products containing artificially high-priced DRAM.

79.     Defendants' conduct as alleged herein violates Section 17200 et seq.  The unlawful combination, conspiracy, and/or agreement effected by Defendants, as well as their acts, omissions, misrepresentations, practices, and non-disclosures in furtherance

22

crowell moring

3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1  thereof, as alleged herein, constitute a common continuous and continuing course of

2  conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business

3  acts or practices within the meaning of California Business and Professions Code,

4  Section 17200 *et seq.* including, but in no way limited to, the following:

5    a.   Defendants' violations of 15 U.S.C. § 1 and Section 16700 *et seq.*,

6         of the California Business and Professions Code, as set forth in

7         Paragraphs 1 through 74, above;

8    b.   Defendants' acts, omissions, misrepresentations, practices, and non-

9         disclosures regarding how they set DRAM prices, as described in

10        Paragraphs 1 through 74 above – whether or not in violation of

11        15 U.S.C. § 1 and Section 16700 *et seq.* of the California Business

12        and Professions Code, and whether or not concerted or independent

13        acts – are otherwise unfair, unlawful, or fraudulent;

14   c.   Defendants' acts and practices, as alleged in paragraphs 1 through

15        74, are unfair to consumers of DRAM in the State of California and

16        throughout the United States, within the meaning of Section 17200

17        *et seq.*, California Business and Professions Code; and

18   d.   Defendants' acts and practices, as alleged in paragraphs 1 through

19        74, are fraudulent or deceptive within the meaning of Section 17200

20        *et seq.* of the California Business and Professions Code.

21   80.   The aforementioned unlawful and unfair business practices of Defendants,

22  and each of them, have injured and present a continuing threat of injury to Plaintiff.

23  Defendants' conduct has restrained competition in the DRAM market, has caused

24  Plaintiff to pay supra-competitive and artificially-inflated prices for DRAM, and has

25  deceived, and may continue to deceive, Plaintiff with respect to the manner in which the

26  prices charged for DRAM have been and will be set.  Thus, Plaintiff is informed and

27  believes that the Defendants may continue to persist in this conduct and commit the

28  aforementioned acts unless and until the Court orders the Defendants to cease and desist.

23

COMPLAINT OF EDGE ELECTRONICS, INC.

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

81.     Defendants have been unjustly enriched as a result of their wrongful conduct and Defendants' unfair competition.  Plaintiff is accordingly entitled to equitable relief, including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits in order to restore money lost by Plaintiff and that may have been obtained by Defendants as a result of such unfair business acts and practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.  In addition, Plaintiff seeks a permanent injunction enjoining Defendants, and their officers, directors, employees, agents, or other representatives, and all others acting in concert with Defendants to cease and desist from colluding together to fix, raise, stabilize, and maintain the prices of, and/or allocate the market for, DRAM prices and making misrepresentations, or fraudulently concealing relevant information, concerning the reason for increased DRAM prices.

I.     **Tolling of the Applicable Statute of Limitations due to Fraudulent Concealment**

82.     Plaintiff incorporates by reference, as if fully set forth, the allegations of paragraphs 1 through 81 of this Complaint.

83.     Plaintiff had no knowledge of the combination and conspiracy alleged herein, or of any facts that might have led to the discovery thereof in the exercise of reasonable diligence, prior to fall 2004 when Infineon Technologies AG entered into a plea agreement with the United States Department of Justice, pursuant to which Infineon agreed to plead guilty to conspiring to fix prices in the DRAM market between July 1999 and June 2002.

84.     Defendants engaged in a successful price-fixing conspiracy concerning DRAM computer chips, which they affirmatively concealed, at least in the following respects:

a.     By meeting secretly to discuss prices, and customers and markets, of DRAM computer chips sold in the U.S. and elsewhere; and

24

COMPLAINT OF EDGE ELECTRONICS, INC.

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

b.   By agreeing among themselves at meetings and in communications not to discuss publicly, or otherwise reveal, the nature and substance of the acts and communication in furtherance of the illegal scheme.

85.   Price increases of DRAM computer chips before and during the Cartel Period were not unusal.  Plaintiff was therefore conditioned by experience in dealing with the Defendants of what it believed to be a competitive industry to expect price increases from time to time.

86.   Plaintiff could not have discovered the existence of the combination and conspiracy alleged herein at an earlier date by the exercise of reasonable due diligence because of the deceptive practices and techniques of secrecy employed by the Defendants to avoid detection and affirmatively conceal such violations.  Defendants consistently ascribed their price increases to ordinary market forces and consideration including, without limitation, falsely attributing price increases to increased demand, shortages in supply, increased manufacturing costs, increased prices of labor and of raw materials, and/or insufficient production capacity.  Such false statements included, without limitation:

a.   The statement of Samsung's vice president of marketing in a September 13, 1999, article, alleged more fully above in paragraph 52, that higher prices were attributable to a DRAM shortage, which was concurred upon by Chee-Wai Ho, director of product marketing for memory products at Infineon Technologies AG; and,

b.   Hynix's April 15, 2002, representation, alleged in paragraph 57, that its increased revenues resulted from increased demand in the DRAM market.

87.   Defendants also falsely informed their customers that they were unable to sell their products at a lower price due to increased manufacturing costs, increased prices of labor and of raw materials, and insufficient production capacity.

88.     Plaintiff had no reason to disbelieve these statements.  Furthermore, most of the explanations provided by Defendants involved non-public and/or proprietary information completely in Defendants' control such that Plaintiff could not verify their accuracy.  Defendants' purported reasons for their price increases of DRAM were materially false and misleading and were made for the purpose of concealing Defendants' anti-competitive scheme as alleged herein.  In truth, at all relevant times, the price of DRAM was artificially inflated and maintained as a direct result of the Defendants' anti-competitive scheme, the operation of which was a substantial (but undisclosed) factor in the pricing of DRAM during the relevant period.

89.     As a result of the fraudulent concealment of the conspiracy, Plaintiff asserts the tolling of the applicable statute of limitations affecting Plaintiff's claims.

**J.     Damages/Restitution**

90.     During the relevant period, Plaintiff purchased DRAM from Defendants, or their subsidiaries, agents, and/or affiliates, and, by reason of the antitrust violations herein alleged, paid more for such products than they would have paid in the absence of such antitrust violations.  As a result, Plaintiff has sustained damages to its business and property and defendants wrongfully acquired money from Plaintiff in an amount to be determined at trial.

**K.     Prayer for Relief**

WHEREFORE, Plaintiff demands judgment against defendants, and each of them, as follows:

91.     A declaration that the unlawful combination and conspiracy alleged herein is an unreasonable restraint of trade of commerce in violation of: Section 1 of the Sherman Act, 15 U.S.C. § 1 (2000 suppl. 2); and Sections 16700 *et seq.* and Sections 17200 *et seq.* of the California Business and Professions Code;

92.     An injunction enjoining, preliminarily and permanently, Defendants and all those acting in concert or in active participation with Defendants from continuing the unlawful combination and conspiracy alleged herein;

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

COMPLAINT OF EDGE ELECTRONICS, INC.

93.     An award to Plaintiff of damages, as provided by law and as appropriate, and joint-and-several judgments in favor of Plaintiff against defendants, and each of them, in an amount to be trebled in accordance with federal and California antitrust laws;

94.     For restitution and disgorgement of revenues, earnings, profits, compensation, and benefits that have been wrongfully taken by defendants from Plaintiff as provided by 17200 *et seq.* of the California Business & Professions Code;

95.     An award to Plaintiff for the costs of this suit (including expert fees), and reasonable attorneys' fees, as provided by law; and

96.     An award to Plaintiff for such other and further relief as the nature of this case may require or as this Court deems just, equitable and proper.

DATED: February **28**, 2007               CROWELL & MORING LLP


By: _____
Kent A. Gardiner
Kathryn D. Kirmayer
Jerome A. Murphy
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone:  202-624-2578
Fax:      202-628-5116

Daniel A. Sasse
Christine E. Cwiertny
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
Phone: 949-263-8400
Fax:     949-263-8414

Paul P. Eyre
Melissa Maxman
Tracy Cole
BAKER & HOSTETLER LLP
666 Fifth Avenue
New York, NY 10103
Phone: 212-589-4210
Fax:     212-589-4201

Counsel for Plaintiff
Edge Electronics, Inc.

27

COMPLAINT OF EDGE ELECTRONICS, INC.

## DEMAND FOR JURY TRIAL

97.     Edge demands a trial by jury, pursuant to Federal Rules of Civil Procedure, Rule 38(b), of all triable issues.

DATED:  February **28**, 2007

CROWELL & MORING LLP

By: _____

Kent A. Gardiner
Kathryn D. Kirmayer
Jerome A. Murphy
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Phone:   202-624-2578
Fax:      202-628-5116

Daniel A. Sasse
Christine E. Cwiertny
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA  92614-8505
Phone:   949-263-8400
Fax:      949-263-8414

Paul P. Eyre
Melissa Maxman
Tracy Cole
BAKER & HOSTETLER LLP
666 Fifth Avenue
New York, NY 10103
Phone:   212-589-4210
Fax:      212-589-4201

Counsel for Plaintiff
Edge Electronics, Inc.

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

28

**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

1

2        Pursuant to Civil L.R. 3-16, the undersigned certifies that the following listed

3    persons, associations of persons, firms, partnerships, corporations (including parent

4    corporations) or other entities (i) have a financial interest in the subject matter in

5    controversy or in a party to the proceeding, or (ii) have a non-financial interest in that

6    subject matter or in a party that could be substantially affected by the outcome of this

7    proceeding:

8        **Entity**                                   **Interest**

9        *A+ Management*
         75 Orville Drive
10       Bohemia, New York  11716

11

12   DATED: February 29 , 2007              CROWELL & MORING LLP

13                                   By: _____

14                                          Kent A. Gardiner
                                            Kathryn D. Kirmayer
15                                          Jerome A. Murphy
                                            CROWELL & MORING LLP
16                                          1001 Pennsylvania Avenue, N.W.
                                            Washington, D.C.  20004
17                                          Phone: 202-624-2578
                                            Fax:    202-628-5116
18
                                            Daniel A. Sasse
19                                          Christine E. Cwiertny
                                            CROWELL & MORING LLP
20                                          3 Park Plaza, 20th Floor
                                            Irvine, CA  92614-8505
21                                          Phone: 949-263-8400
                                            Fax:    949-263-8414
22
                                            Paul P. Eyre
23                                          Melissa Maxman
                                            Tracy Cole
24                                          BAKER & HOSTETLER LLP
                                            666 Fifth Avenue
25                                          New York, NY  10103
                                            Phone: 212-589-4210
26                                          Fax:    212-589-4201

27                                          Counsel for Plaintiff
                                            Edge Electronics, Inc.
28   DC2936924v1

COMPLAINT OF EDGE ELECTRONICS, INC.